UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PAUL D.,

           Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

Case No. C24-5386-SKV

ORDER REVERSING THE COMMISSIONER'S DECISION

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits (DIB). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff was born in 1979, has a high school education, and has worked as a quality control technician, radiology technician, driver, and electrician apprentice. AR 25. Plaintiff was last gainfully employed in November 2018. AR 51.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 1

On November 16, 2021, Plaintiff applied for benefits, alleging disability as of January 2019. AR 17. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. AR 17. After the ALJ conducted a hearing on January 18, 2024, the ALJ issued a decision finding Plaintiff not disabled. AR 17.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**: Plaintiff has not engaged in substantial gainful activity since January 1, 2019.

**Step two**: Plaintiff has the following severe impairments: mild lumbar degenerative disc disease, ankylosing spondylosis, and fibromyalgia.

**Step three**: These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity**: Plaintiff can perform light work, but can only stand and walk two hours total in an eight-hour workday.

**Step four**: Plaintiff cannot perform past relevant work.

**Step five**: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR 19, 22-23, 30.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-3. Plaintiff appealed the final decision of the Commissioner to this Court. Dkt. 4. The parties consented to proceed before the undersigned Magistrate Judge. Dkt. 2.

## LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by

---

[1] 20 C.F.R. § 404.1520.
[2] 20 C.F.R. Part 404, Subpart P., App. 1.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 2

1 substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir.
2 2005). As a general principle, an ALJ's error may be deemed harmless where it is
3 "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104,
4 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to
5 determine whether the error alters the outcome of the case." *Id*.

6 Substantial evidence is "more than a mere scintilla. It means - and means only - such
7 relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
8 *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d
9 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating symptom testimony, resolving
10 conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v.
11 Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record
12 as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the
13 Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is
14 susceptible to more than one rational interpretation, it is the Commissioner's conclusion that
15 must be upheld. *Id.*

## DISCUSSION

17 Plaintiff argues the ALJ erred by discounting Plaintiff's subjective symptom testimony,
18 in her assessment of the persuasiveness of the medical opinions, and in failing to explain how
19 she considered third-party testimony. Dkt. 9. The Commissioner argues the ALJ's decision is
20 free of harmful legal error, supported by substantial evidence, and should be affirmed. Dkt. 11.

21 **A.    The ALJ Erred in Evaluating Plaintiff Testimony**

22 The ALJ considered Plaintiff's testimony and discounted it based on inconsistencies with
23 the medical record and his daily activities. AR 25-27. Absent evidence of malingering, an ALJ

is required to provide clear and convincing reasons to discount a claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). This requires the ALJ to specify which testimony is not credible and which evidence contradicts it. *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). However, the ALJ is not required to believe every claim of disabling pain or to analyze Plaintiff's testimony line by line. *Ahearn v. Saul*, 988 F.3d 1111, 1116 (9th Cir. 2021); *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

The ALJ found that Plaintiff's testimony was not persuasive based on (1) inconsistency with the overall medical record, (2) doctor's notes showing symptoms improved with treatment, and (3) Plaintiff's activities contradicted his symptom testimony. AR 25.

Plaintiff argues that the ALJ erred in rejecting Plaintiff's subjective symptom testimony as she did not provide clear and convincing reasons for dismissing the symptoms related to fibromyalgia, did not accurately represent the evidence related to Plaintiff's ankylosing spondylitis, unreasonably concluded that the record showed improvement of Plaintiff's impairments, and unreasonably concluded Plaintiff's activities were not consistent with his symptom testimony. Dkt. 9 at 2-10.

The objective evidence standard "requires that an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective testimony when there is no objective testimony evincing otherwise." *Smartt*, 53 F.4th at 498. That is, an ALJ may not demand positive objective evidence supporting every allegation a claimant makes. But an ALJ may rely on inconsistencies in the medical record and in statements to reject testimony. 20 C.F.R. § 404.1529(c)(4); *Farlow v. Kijakazi*, 53 F.4th 485, 489 (9th Cir. 2022); *see also Eblen v. Saul*,

ORDER REVERSING THE COMMISSIONER'S
DECISION - 4

811 F. App'x 417, 420 (9th Cir. 2020) (ALJ properly discounted testimony based on inconsistent statements).  Inconsistent medical evidence, evidence of improvement with treatment, and evidence of minimal treatment are all valid reasons to reject a claimant's allegation of disabling limitations.  *See*, *e.g.*, *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("evidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Molina*, 674 F.3d at 1113-14 (ALJ may rely on an unexplained or inadequately explained failure to seek treatment); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); 20 C.F.R. § 404.1529(c)(3)("symptoms . . . which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account.").

      Plaintiff testified that his ankylosing spondylitis and fibromyalgia cause constant stiffness and pain, and that sitting causes the pain to worsen when he stands or walks.  AR 53-54.  All movements of his hips and shoulders cause extreme pain.  AR 53.  Either sitting or standing for an extended period results in symptoms flaring to the point where he needs to lay down for an extended period.  AR 54-55.  His medications are of limited effectiveness, cause dizziness, tiredness, brain fog, and lower his immune system.  AR 56.  He has 12 to 15 symptom flareups a month which leave him bedridden from pain.  AR 64.  These flareups impact his ability to sleep which worsens his symptoms of fatigue.  AR 67.  On a typical day he sits with a heating pad for twenty minutes before doing his daily stretching and finishing with a massage gun.  AR 68.

      The ALJ points to the lack of herniations or stenosis on imaging, and examinations "showing a generally normal gait and no motor strength, sensory or reflex deficits or findings of severely unstable gait" as undermining his claims of debilitating pain.  AR 24.  But

"examinations showing mostly normal results 'are perfectly consistent with debilitating fibromyalgia.'" *Estrada v. Saul*, 842 F. App'x 154, 155 (9th Cir. 2021) (quoting *Revels v. Berryhill*, 874 F.3d 648, 666 (9th Cir. 2017)).  Accordingly, after a claimant has established a diagnosis of fibromyalgia, a longitudinal review of the record is required whenever possible.  *Id*.

The record reflects that Plaintiff has consistently reported debilitating fibromyalgia flare ups to his providers.  AR 396 ("he had a flare up in which he had to sleep in bed all day and body was extremely sensitive to touch"); *see also* AR 320, 2431, 2438, 2535, 2538, 2541, 2544, 2545.  He similarly consistently reported musculoskeletal pain throughout his body, as well as accompanying fatigue.  AR 2431-57, 2489-91, 2504-05, 2513, 2536, 2538, 2540, 2545, 2547, 2552, 2563-64, 2631, 2645, 2654-55, 2691-92, 2721, 2729.  The portions of the record cited by the ALJ do not contradict Plaintiff's testimony about his pain related symptoms.  Accordingly, the ALJ erred in rejecting Plaintiff's testimony for this reason.

As to Plaintiff's ankylosing spondylitis symptoms, it is difficult if not impossible to extricate those pain and fatigue symptoms which arise from his ankylosing spondylosis as opposed to his severe lumbar degenerative disc disease and fibromyalgia.  While the ALJ points to evidence that Plaintiff's ankylosing spondylitis is not severe enough to support his subjective symptom testimony, this is not the standard.  The ALJ must consider whether the symptom testimony is contradicted when considering the combined effects of the impairments.  *See Smith v. Colvin*, 554 F. App'x 568, 569 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)) (holding that the ALJ erred where the assessed "RFC failed to take into account the combined effect of the [claimant's] severe mental and physical impairments").  Accordingly, the ALJ erred in rejecting Plaintiff's testimony for this reason.

      The ALJ points to evidence in the record that Plaintiff inconsistently reported improvement from his medications. AR 24 (citing AR 1058 ("Enbrel improve[s] the symptoms by 15 to 20% only. Humira was 0%. He notices some improvement but not as significant as he expects."); AR 2563 ("Previously had tried Enbrel and Humira without any benefit. Patient has failed NSAIDs. Taking taltz from rheumatology and started a few weeks. Patient . . . not seeing much improvement of symptoms yet.")). The cited portion of the record does not contradict Plaintiff's testimony that he has not noticed improvement with medications. Additionally, the social security administration recognizes that the symptoms of fibromyalgia wax and wane, and that a person may have bad days and good days. *Revels*, 874 F.3d 648, 657 (9th Cir. 2017) (citing SSR 12-2P). Accordingly, the ALJ erred in rejecting Plaintiff's testimony for this reason.

      The ALJ last references Doctor's notes that Plaintiff goes to the gym regularly as evidence that he has the capacity to work. AR 25. At the hearing Plaintiff testified that he stretches every morning to alleviate symptoms. AR 68. In his disability appeal form Plaintiff stated that it "takes a lot of mental preparation to get myself into the gym anymore because my stiffness and pain have progressed to where it's a battle just to do this task. I have to literally mentally force myself to go because I know I need this particular type of workout and exercise to keep myself as mobile as I can for as long as I can. After exercising I will head home to do more stretching and take a hot shower to help relax the body more." AR 322. Doctors' notes show that exercise helped Plaintiff alleviate some of his symptoms, AR 396, and doctors encouraged him to continue exercising as a treatment option for a variety of his ailments. AR 400, 444-48, 489, 762, 768, 784-86, 799, 807, 832, 912-13, 1058, 1085, 1163.

      Plaintiff reported to doctors in March 2020 that he "[goes] to the gym with regularity and [works out] both aerobically as well as with resistance." AR 2435. In August 2021, Plaintiff

reported to his doctor that he engaged in "moderate to strenuous exercise," defined as activities that cause a light or heavy sweat, four days a week for 80 minutes. AR 471. This note is carried forward fifty times to all subsequent records with this provider, reflecting the August 2021 date as the "date recorded." *See, e.g.*, AR 1611, 1756, 2055, 2098, 2107, 2114, 2121, 2128, 2142. He again reported exercising regularly at doctor's appointments in August and December of 2022. AR 1345, 1586.

Generally, the ALJ is permitted to weigh all of this evidence and resolve it in favor of a finding of inconsistency. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). But the record is not clear as to the nature and frequency of the exercise at the time of the hearing. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (ALJ erred in discrediting pain testimony based on plaintiff's report of walking one to one-and-a-half miles twice a day); *Bridget D. v. Kijakazi*, No. 2:20-cv-6198-SK, 2021 U.S. Dist. LEXIS 241413, at *2, 2021 WL 5917117, at *1 (C.D. Cal. Sept. 27, 2021) (Plaintiff's reported swimming was not a clear and convincing reason supported by substantial evidence to find her not credible, as the record was not adequately developed as to the nature and frequency of the exercise); *Sanchez v. Colvin*, No. CV 16-05136-KES, 2017 U.S. Dist. LEXIS 145245, 2017 WL 3971846, at *11 (C.D. Cal. Sept. 7, 2017) (treatment notes' references to Plaintiff's ability to exercise was not inconsistent with her claimed limitations as the notes did not indicate nature or frequency of exercise). Accordingly, the ALJ erred in rejecting Plaintiff's testimony for this reason.[3]

**B.      The ALJ Did Not Err in Evaluating Medical Opinion Evidence**

Plaintiff argues that the ALJ erred in evaluating the medical opinions of Drs. Belous, Platter, Weaver, and erred in not considering the conclusions of the physical capacitates

---

[3] Moreover, just as the ALJ would not find visiting a physical therapist four times a week as evidence of non-disability, it is unreasonable for the ALJ to punish Plaintiff for following Doctor's orders to exercise regularly.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 8

evaluation conducted by Aaron Varney, Master of Occupational Therapy (MOTR/L) and Certified Hand Therapist (CHT).[4] The ALJ found the opinion of consultive medical examiner Dr. Belous and reviewing medical examiners Dr. Platter and Weaver persuasive. The ALJ found MOTR/L CHT Varney's opinion conclusory and unpersuasive.

When determining whether a claimant is eligible for benefits, an ALJ need not take every medical opinion at "face value." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). Instead, the ALJ must scrutinize the various—often conflicting—medical opinions to determine how much weight to give each opinion. *Id*. ALJs look to a number of factors, with a specific focus on whether the explanation supports the opinion and whether the opinion is consistent with the other evidence on the record. 20 C.F.R. § 404.1520c(a)-(c).

While an ALJ must explain why he rejects medical opinion evidence, no such requirement exists where the ALJ accepts medical opinion evidence. *See* 20 C.F.R. § 404.1527; 96-8p (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."); *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (explaining that the ALJ is not required to provide clear and convincing reasons where the ALJ is not rejecting medical opinion evidence).

Plaintiff argues that the ALJ gave too much weight to the opinions of consultative medical evaluator Dr. Belous and of reviewing physician's Drs. Platter and Weaver, as the findings were "largely not relevant or informative as to the severity or functional impact of Plaintiff's ankylosing spondylitis and fibromyalgia." Dkt. 9 at 12. Plaintiff further takes issue with the reviewing physicians' opinions as "there is nothing in the disability determinations

---

[4] The Court notes the parties refer Aaron Carney, who is not present in the record. This appears to be a scrivener's error, as the opinion cited in all briefings is that of Aaron C. Varney, MOTR/L, CHT. AR 2552. Accordingly, the Court evaluates the parties' arguments as they relate to Mr. Varney.

showing that they took [sic] gave more than minimal consideration to Plaintiff's most limiting impairments and they offered no explanations as to how they drew the conclusions that they did." Dkt. 9 at 12-13. Non-examining State agency medical consultants are highly qualified and experts in the evaluation of Social Security disability claims and, while not binding, their opinions must be considered. 20 C.F.R. § 404.1513a(b)(1). Plaintiff essentially reiterates his arguments as they relate to his symptom testimony and does not point the Court to an opinion from an acceptable medical source which would result in the ALJ's evaluation being a harmful error.

In weighing medical source opinions, Social Security regulations distinguish between acceptable medical sources and other sources. 20 C.F.R. § 404.1513. Occupational therapists are not "acceptable medical sources" under the applicable regulations. 20 C.F.R. § 404.1502. As such, ALJs are "not required to articulate how [they] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). While the record does not contain the physical capacities evaluation conducted by Mr. Varney, his notes include objective medical findings and a history of Plaintiff's present illness. AR 2553. Plaintiff argues that the ALJ had a duty to further develop the record as the record did not include the actual testing and assessment results. Dkt. 9 at 14. Plaintiff "bears the burden of proving that [he] has an impairment that meets or equals the criteria of [a listed] impairment." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (cleaned up). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). The ALJ considered the medical opinions from ten other providers as well as the state medical agency. Accordingly, that the ALJ rejected the nonmedical opinion as brief and conclusory is, at most, harmless error. *See Thomas*, 278

F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). Nonetheless, on remand the ALJ should review the physical capacities evaluation to fully develop the record.

### C. The ALJ Erred in Evaluating Lay Witness Evidence

The Court notes that the Ninth Circuit has not yet clarified whether an ALJ is still required to provide "germane reasons" for discounting lay witness testimony. *See Stephens v. Kijakazi*, 2023 WL 6937296, at *2 (9th Cir. Oct. 20, 2023). However, that an ALJ can disregard or reject relevant lay witness evidence for *no* reason is inconsistent with the Commissioner's obligation pursuant to other controlling regulations to determine Plaintiff's RFC based upon all relevant evidence of record, including observations made by a claimant's family, neighbors, friends, or other person. *See* 20 C.F.R § 404.1529(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."); *id.* at § 404.1545(a)(3) ("We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons."); *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (holding that an ALJ may not reject "significant probative evidence" without explanation).

As noted, Ninth Circuit law remains unsettled regarding the standard for reviewing an ALJ's evaluation of lay witness testimony under the 2017 regulations. *See Stephens*, 2023 WL 6937296, at *2; *Mark C. J. v. Comm'r of Soc. Sec.,* No. 3:24-CV-5252-DWC, 2024 WL 4182576, at *4 (W.D. Wash. Sept. 13, 2024) (noting unsettled nature of Ninth Circuit law and

ORDER REVERSING THE COMMISSIONER'S
DECISION - 11

applying "germane" reasons standard in absence of guidance from Ninth Circuit).  Without providing reasons for rejecting testimony this Court is unable to meaningfully review the ALJ's decision.  The ALJ here mis-identified the lay witness, L.D., as Plaintiff's son rather than his mother, does not provide any explanation of how the statements were considered, and did not assess the persuasiveness.  Accordingly, the ALJ erred in her evaluation of L.D.'s testimony.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ shall reconsider Plaintiff's testimony, consider the lay statements, develop the record as to the physical capacities evaluation conducted by Mr. Varney, and redetermine RFC as needed and proceed to the remaining steps of the disability determination process as appropriate.

Dated this 31st day of January, 2025.

S. KATE VAUGHAN
United States Magistrate Judge